UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ENTERGY MISSISSIPPI, INC.                                                                    PLAINTIFF

VS.                                                    CIVIL ACTION NO. 5:11cv49-HTW-LRA

MARQUETTE TRANSPORTATION
COMPANY, LLC and
BLUEGRASS MARINE, LLC                                                        DEFENDANTS

---

### MARQUETTE TRANSPORTATION COMPANY, LLC AND BLUEGRASS MARINE, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DOLPHIN IS AN OBSTRUCTION

---

Defendants, Marquette Transportation Company, LLC (Marquette) and Bluegrass Marine, LLC, seek partial summary judgment against Entergy Mississippi, Inc. (Entergy) because the dolphin fender created an obstruction in fact and as a matter of law. Specifically, the building of the dolphin fender by Entergy's predecessor, Mississippi Power and Light Co., violated 33 U.S.C. § 403 (the Rivers and Harbors Act, which requires strict compliance with Corps' permits). Violations of this statute requires a finding that the dolphin is an obstruction, which triggers the *The Pennsylvania* Rule.

### FACTUAL BACKGROUND

1. **The Corps of Engineers Permits**

Following the April 5, 2008 allision between the M/V ROBERT E. FRANE and one of the dolphin fenders leased by Entergy at the Fuel Oil Handling and Storage Facility, Marquette submitted a Freedom of Information Act request to the U.S. Army Corps of Engineers asking for copies of all permits relevant to the river structures at this location. In response to Marquette's

request, the Corps responded by sending copies of five separate permits which allowed the construction of structures in the river.

From 1965 through 1973, the Corps granted permits to Mississippi Power and Light Company to construct various water bound structures and terminals in the Mississippi River to serve the adjacent power plant.  In each permit, the applicant, Mississippi Power and Light, described the location and placement of all structures it intended to build in the river in the "KEY PLAN."  In other words, the permit includes the drawings as a component of the permitted activity.  Accordingly, the permit speaks for itself to describe the permitted construction.  No other documents provided by the permitting agency itself, the U.S. Army Corps of Engineers, describes the dolphin in any plan or drawing.  Thus, the absence of the dolphin in any permit demonstrates that construction of the dolphin was never approved by the Corps.

A synopsis of the various permits the Corps issued follows:

| EXHIBIT A | Permit Date: April 13, 1965 | Permit to construct effluent discharge pipeline |
| EXHIBIT B | Permit Date: June 15, 1965 | Permit to circulating water system, vehicular bridge and mooring facility to unload fuel oil |
| EXHIBIT C | Permit Date: July 16, 1969 | Permit to construct circulating water system and one pile dolphin |
| EXHIBIT D | Permit Date: Nov. 13, 1973 | Permit to construct a fuel unloading facility and a hydraulic land fill |
| EXHIBIT E | Permit Date: Nov. 30, 1973 | Permit to install two mooring dolphins at the existing fuel oil terminal[1] |

The permit describing the Fuel Oil Handling and Storage Facility that Entergy leases is described in Exhibit D to this motion.  In its complaint, Entergy alleges that Marquette damaged one of the dolphin fenders at the fuel unloading terminal.  In each instance that the proposed

---

[1] Ms. Power and Light specifically requested and received permission to construct two additional mooring dolphins (see Exhibit E) at a different fuel oil terminal.  These additional dolphins do not relate to the permit to construct the Fuel Oil Handling and Storage Facility and are part of a separate terminal facility at the power plant.  These dolphins are not part of this litigation.

construction called for the placement of a dolphin, the applicant (Mississippi Power and Light Co.) carefully described the intended construction of the dolphin in the drawings which formed part of the permit. However, when the Corps permitted the fuel unloading dock (Exhibit D), dolphin fenders and the "Dolphin Fender System" do not appear in the drawings or other accompanying documents.[2]

### 2. The Allision

Briefly, the facts of this case are not disputed. Marquette owns and Bluegrass Marine, LLC operates the M/V ROBERT F. FRANE, a push boat operating in the Mississippi River. On April 5, 2008, during high water, the FRANE was pushing a barge package downriver near Vicksburg. During the transit near the Vicksburg Rail Road Bridge, one of the barges in the FRANE's tow allided with a wooden and metal dolphin fendering system near the left descending river bank and close to the Baxter Wilson Steam Electric Station, which is allegedly owned by Entergy. The dolphin fender sits near the fuel unloading facility, which the Corps separately permitted in Exhibit D. The allision caused damage to the dolphin, which is not permitted, and not the fuel unloading facility, which is. Since April 5, 2008, the dolphin remains un-repaired by its lessee, Entergy or its owner.

### ARGUMENT

### The Unpermitted Presence of the Dolphin Fender Created an Obstruction Per Se

Entergy's predecessor made five separate applications to the Corps to construct its river facilities. In each instance, it fully described the intended construction, and even separately sought permits to place dolphins at an existing facility. But the Corps permits never describe the dolphin which forms the basis of this litigation.

---

[2] R 13, Entergy's Amended Complaint, Paragraph V describing the property and structures at the river location.

3

When the Corps permitted the construction of the Fuel Unloading Facility in the river, the permit did not include the construction of the fendering system or the subject dolphin fender. Whereas, certain other permits contemplated fender construction, the Fuel Unloading Facility did not. 33 U.S.C. § 403 provides that the creation of any obstruction in navigable waters <u>not authorized by law</u> is prohibited. Under 33 C.F.R. § 64.06 (2011), an "obstruction means anything that restricts, endangers, or interferes with navigation." A vessel may be an obstruction in fact when it is moored in an unreasonable manner or location. Likewise, a fixed structure, such as a dolphin, can be considered an obstruction. *Orange Beach Water, Sewer & Fire Protection Authority v. M/V ALVA*, 680 F.2d 1374, 1380 (11th Cir. 1982); *The William C. Atwater*, 110 F.2d 644 (2nd Cir. 1940); *The Frank*, 40 F.2d 430 (2nd Cir. 1930); *The Bern*, 166 C.C.A. 495, 255 F. 325 (2nd Cir. 1918) (a dredge anchored outside the dredge channel in the Kills, where navigation was difficult under any conditions); *City of Birmingham*, 138 F. 555 (2nd Cir.).

But Congress has mandated that certain enumerated structures are considered obstructions by their nature, unless they have been authorized by the Corps. In fact, § 403 expressly forbids the construction of a dolphin. "It shall not be lawful to build or commence the building of any. . . dolphin. . . except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army." 33 U.S.C. § 403. Structures violating clauses two or three (of §10 of Rivers and Harbors Act, codified in 33 U.S. 403) are "presumed to be obstructions under the first clause." *United States v. Milner*, 583 F.3d 1174 *citing Alameda Gateway*, 213 F.3d at 1165; *Sierra Club v. Andrus*, 610 F.2d 581, 596 (9th Cir. 1979), rev'd on other grounds sub nom. *California v. Sierra Club*, 451 U.S. 287, 101 S. Ct. 1775, 68 L. Ed. 2d 101 (1981). A dolphin, which Congress specifically included in the language of the statute,

cannot be built without Corps approval. Further, "the structures and activities set forth in the second and third clauses need not be shown to obstruct navigable capacity before federal authorization is required by the terms of the statute." *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1210-1211 (6th Cir. Ohio 1980).

Entergy will likely contend that the dolphin did not actually obstruct the channel, or that the permit implicitly included the dolphin from the plans. But the express language of the statute, combined with the interpretation of the statute by the courts, establish that a dolphin placed on the navigable waterways is an obstruction as a matter of law. As required by Congress, specific authorization is required to build a dolphin; it cannot be extended by inference.[3] Nothing in the language of the statute itself suggests that a dolphin can be authorized by inference from another permitted structure. If the permit to construct the fuel dock implicitly authorized the construction of the dolphin fender system, then the express language of § 403 to the contrary would be without effect. Congress expressly requires specific Corps approval for dolphin construction, and the permits here illustrate that the Corps never extended such authority. Therefore, the dolphin is an obstruction as a matter of law.

In *Zabel v. Tabb,* 430 F.2d 199 (5th Cir. 1970), the court recognized that the Rivers and Harbors Act, 33 U.S.C. § 403, declared that "the creation of any obstruction . . . to the navigable capacity of any of the waters of the United States is prohibited," unless authorized by the Corps of Engineers. The duty not to create an obstruction to navigation extends to the entire width of a navigable waterway, and is not limited to the dredged channel. *See Orange Beach Water, Sewer and Fire Protection Authority v. M/V ALVA,* 680 F.2d 1374, 1382-1383 (11th Cir. 1982). *See also, United States v. Raven,* 500 F.2d 728, 732 (5th Cir. 1974), cert. denied, 419 U.S. 1124, 95 S. Ct. 809, 42 L. Ed.2d 824 (1975); *United States v. Joseph G. Moretti, Inc.* 478 F.2d 418, 428-

---

[3] No case law authorizing an otherwise unpermitted structure by inference can be located.

5

29, 429 n.37 (5th Cir. 1973). In fact, the navigable waters even include the mud along the shore through which vessels are capable of running. *Western Union Tel. Co. v. Inman & I.S.S. Co.*, 59 F. 365 (2nd Cir. 1894); *Jones Towing, Inc. v. United States*, 277 F.Supp. 839, 848 (E.D. La. 1967); *In Re Martin*, 102 F.Supp. 43 (E.D. Pa. 1951).

Here, Larry Gwin, the vessel captain, testified that the navigable channel of the Mississippi River at the location of interest extends from the green buoy (on the right descending bank) all the way to the river bank where the dolphin is located (on the left descending bank). "[A]ll I know is the channel goes from the buoys to the bank." See Exhibit F, Deposition of Larry Gwin, Pg. 130, Lines 19-25, Pg. 131, Lines 1-15. Because the dolphin lies between the green buoy and the bank, it is an obstruction to navigation because it lies within the navigable channel at that location. The dolphin is not permitted, and therefore violates 33 U.S.C. § 403.

The failure to comply with a permit issued by the Corps triggers the application of the Rule of *The Pennsylvania*. *See The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L. Ed. 148 (1873); *Orange Beach Water, Sewer and Fire Protection Authority v. M/V ALVA*, 680 F.2d 1374, 1383 (11th Cir. 1982); *Evergreen Int'l, S.A. v. Marinex Constr. Co.*, 477 F.Supp.2d 681; 2007 U.S. Dist. LEXIS 20698; 2007 AMC 1606 (D.S.C. Mar. 3, 2007).

*The Pennsylvania* Rule is triggered when a vessel is party to a maritime accident and is in violation of a statutory rule. *Florida Marine Transporters, Inc. v. Sanford*, 255 Fed.Appx. 885, 888 (5th Cir. 2007); *In Re MidSouth Towing Co.*, 418 F.3d 526, 534 (5th Cir. 2005); *Pennzoil Prod. Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1472 (5th Cir. 1991). Likewise, the Rule contemplates situations, such as this case, where an allision occurs and the presence of the fixed structure violates a statutory rule. Under the Rule, the burden shifts to "the vessel in derogation of a statutory rule" to show not merely that the violation might not have been one of the causes,

or that it probably was not, but that it could not have been a cause of the accident. *Florida Marine Transporters, Inc.*, 255 Fed.Appx. at 888; *In Re MidSouth Towing Co.*, 418 F.3d at 534; *Pennzoil Prod. Co.*, 943 F.2d at 1472.

## CONCLUSION

The Corps of Engineers never permitted the construction of the dolphin fender at the Fuel Unloading Terminal. The presence of such an unpermitted structure constitutes an obstruction as a matter of law. Further, this dolphin lies within the navigable channel. It follows that Marquette is entitled to partial summary judgment finding that the unpermitted dolphin fender is an obstruction as a matter of law. Importantly, this motion does not seek a dismissal or a ruling on the allocation of fault. It is limited to the question of whether the unpermitted dolphin is an obstruction.

Respectfully submitted, this 10th day of August, 2012.

> MARQUETTE TRANSPORTATION COMPANY, LLC AND BLUEGRASS MARINE, LLC
>
> BY: FOWLER, RODRIGUEZ, VALDES-FAULI
>
> By: /s/ Todd G. Crawford
> Todd G. Crawford (MSB# 102620)
> John A. Scialdone (MSB# 9524)
> Christopher L. Schmidt (MSB# 10104)
> John S. Garner (MSB# 102470)
> Fowler, Rodriguez, Valdes-Fauli
> Post Office Box 4080 (39502)
> 2505 14th Street, Suite 500
> Gulfport, MS 39501
> Telephone: (228) 822-9340
> Facsimile: (228) 822-9343
> Email: tcrawford@frvf-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Todd G. Crawford
Todd G. Crawford